FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 19, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHERRY W.,[1]

                    Plaintiff,

       v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

                    Defendant.

No.  2:24-CV-00403-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR PAYMENT OF BENEFITS**

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2]  Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is hereby substituted as the Defendant.

Due to insulin-dependent diabetes mellitus; diabetic peripheral neuropathy; non-proliferative diabetic retinopathy without macular edema; cataracts; myopia, astigmatism, presbyopia; obesity; stage 3B chronic kidney disease; chronic headaches; lumbar degenerative disc disease; major depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder (PTSD), Plaintiff Sherry W. claims she is unable to work fulltime and applied for social-security benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed whether Plaintiff met or equaled the listings, improperly assessed Plaintiff's subjective claims, and improperly evaluated the medical opinions. As is explained below, the ALJ erred. This matter is remanded for payment of benefits.

## I.    Background

In 2019, Plaintiff filed applications for benefits under Title 2 and Title 16, claiming disability beginning June 7, 2019,[3] based on the

---

[3] Plaintiff initially alleged an onset date of November 20, 2018, but later amended her onset date to the date of filing. AR 73.

physical and mental impairments noted above.[4] Plaintiff's claims were denied at the initial and reconsideration levels.[5]

After the agency denied Plaintiff benefits, ALJ Lori Freund held a telephone hearing in February 2021, at which Plaintiff and a vocational expert testified.[6] On September 8, 2021, the ALJ issued an unfavorable decision denying Plaintiff's claims.[7] Plaintiff appealed, and on January 24, 2023, the Appeals Council remanded the case back to the ALJ for further proceedings.[8]

On August 23, 2023, the ALJ held a telephone hearing.[9] Plaintiff's counsel and a vocational expert attended the hearing, but Plaintiff did not answer her phone to appear.[10] Plaintiff was served a

---

[4] AR 479, 510, 553.

[5] AR 261, 269, 272.

[6] AR 68-102.

[7] AR 228-253.

[8] AR 254-260.

[9] AR 102-121.

[10] *Id.*

Notice to Show Cause and responded that her phone was not working on the day of the hearing and she tried to contact the hearing office but could not.[11] On January 11, 2024, the ALJ held a supplemental telephone hearing.[12] Plaintiff appeared with her attorney, and Plaintiff and a vocational expert testified.[13]

Plaintiff testified that she had been advised to attend aquatic physical therapy by a neurologist but she was uncomfortable with the neurologist.[14] Her primary doctor told her to attend an EMG instead but her insurance would not cover the EMG.[15] She said she was taking gabapentin and a muscle relaxer for back pain, was taking insulin and Victoza for her diabetes, paroxetine for depression, amlodipine and levothyroxine for her thyroid, and losartan for blood pressure.[16] She

---

[11] AR 437-439, 440.

[12] AR 122-173.

[13] *Id.*

[14] AR 132.

[15] AR 133-134.

[16] AR 135.

said she had gained weight.[17] Her main problems are with her back and kidneys, and she has pain that goes into her left leg, as well as numbness.[18]

Plaintiff testified that she had used a cane for some time but her legs started shaking more and she would fall, so she now uses a walker more often.[19] She uses the walker both in and out of the house.[20] She said the doctor who prescribed the walker wondered why she used a cane at all and she said she did so to try to strengthen her legs.[21] She said she hurt her shoulder when she fell at the mall.[22]

Plaintiff said she has issues with vision, but her insurance was not accepted by doctors and that she was told she could not drive

_____

[17] AR 137.

[18] AR 137-138.

[19] AR 138.

[20] AR 138-139.

[21] AR 139.

[22] Ar 140.

unless her vision improved.[23]  She said she is also limited from driving due to slow reflexes.[24]

After the hearing, the ALJ issued a decision denying benefits.[25] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[26] As to medical opinions: the ALJ found:

- The opinions of state agency evaluators Norman Staley, MD, and Howard Platter, MD, to be partially persuasive.

- The opinions of medical expert W. Benton Boone, MD, to be persuasive.

- The opinions of treating provider Jonathan Haymore, MD, to be somewhat persuasive.

---

[23] AR 142-143.

[24] AR 145.

[25] AR 25-60. Per 20 C.F.R. §§ 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[26] AR 44.

- The opinions of treating provider Jaime Valentino, ARNP, to be not persuasive.

- The opinions of reviewing evaluator Brent Packer, MD, to be not persuasive.

- The opinions of treating source Lich Pham, MD, to be not persuasive.

- The opinions of consultative examiner Rebecca Alexander, PhD, and reviewing evaluator Dr. Michael Jenkins-Guarnieri to be somewhat persuasive.

- The opinions of examining source Kayleen Islaw-Zwart, PhD, to be not persuasive.

- The opinions of state agency evaluators Beth Fitterer, PhD, and Carol Moore, PhD, to be partially persuasive.[27]

The ALJ also considered the third-party statement of Plaintiff's boyfriend and found it not consistent with the medical record.[28] As to the sequential disability analysis, the ALJ found:

---

[27] AR 45-50.

[28] AR 44.

- Plaintiff met the insured status requirements through December 31, 2024.

- Step one: Plaintiff had not engaged in substantial gainful activity since June 7, 2019, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: diabetes mellitus; diabetic peripheral neuropathy; non-proliferative diabetic retinopathy without macular edema; cataracts; myopia, astigmatism, presbyopia; obesity; chronic kidney disease; chronic headaches; lumbar degenerative disc disease; major depressive disorder; generalized anxiety disorder; and PTSD.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and considered listings 1.15, 1.16, 2.02, 6.05, 11.14, 11.12, 12.14, 12.06, and 12.15.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

[Plaintiff] can lift up to ten pounds frequently and 20 pounds occasionally. She can stand and walk for up to six hours in an eight-hour workday. She can sit for at least six hours in an eight-hour workday. She would likely need a sit/stand option allowing for brief changes in positioning that should not interfere with productivity. She would need to avoid all ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She would need to avoid all unprotected heights and working around hazards and hazardous machinery. She should avoid the operational control of moving machinery and working around any type of machinery with moving mechanical parts. She is capable of simple and repetitive tasks with some detail but nothing complex. She is capable of handling occasional changes in a work setting. She can have occasional interaction with coworkers and supervisors. She can have occasional, superficial interaction with the general public. She would need to avoid tasks that would involve fine vision (meaning handling very small items such as a circuit board or something that would require very acute vision/hand eye coordination). She would be capable of using a computer if able to adjust the font size. She can occasionally read for purposes of specific tasks involved in a job..

- Step four: Plaintiff was not capable of performing past relevant work as a sales clerk and child monitor.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in

significant numbers in the national economy, such as routing clerk (DOT 222.587-038), small products assembler (DOT 706.684-022), and an office helper (DOT 239.567-010).[29]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[30]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[31] and such error impacted the nondisability determination.[32] Substantial evidence is

---

[29] AR 31-51.

[30] AR 1-7; ECF No. 1.

[31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g);

[32] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

1  "more than a mere scintilla but less than a preponderance; it is such

2  relevant evidence as a reasonable mind might accept as adequate to

3  support a conclusion."[33]

## III.  Analysis

4

5

6      Plaintiff initially argued the ALJ erred in her evaluation of

7  Listings 6.05, 6.03, and 1.15; erred by not properly evaluating

8  Plaintiff's testimony; and erred by not properly assessing the medical

9  opinions.[34] The Commissioner argues that the ALJ properly evaluated

10  Listings 6.05 and 6.03, properly evaluated Plaintiff's testimony. and

11

12  _____

13  [33] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

14  980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

15  1035 (9th Cir. 2007) (The court "must consider the entire record as a

16  whole, weighing both the evidence that supports and the evidence that

17  detracts from the Commissioner's conclusion," not simply the evidence

18  cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d

19  383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

20  not indicate that such evidence was not considered[.]").

21

22  [34] ECF No. 8.

23

DISPOSITIVE ORDER - 11

properly considered the medical opinions.[35] In Plaintiff's Reply, she argues that the Commissioner waived any argument as to the ALJ's consideration of Listing 1.15 because he did not address that issue in his brief.  The Court concludes that it need not address whether the Commissioner waived argument as to Listing 1.15 because the record establishes that Plaintiff met her burden in establishing that she met or equaled that listing.  As is explained below, the ALJ's analysis contains consequential error, and the case should be remanded for an award of benefits from October 10, 2022.

**A.     Step Three: Plaintiff established consequential error.**

Plaintiff contends the ALJ failed to provide substantial evidence to support the finding that Plaintiff did not meet Listing 1.15. The Court agrees.

1.     Standard

The Listings set forth by the Commissioner "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial

---

[35] ECF No. 9.

gainful activity.'[36]  At step three of the sequential evaluation, Plaintiff bears the burden of demonstrating that her impairment meets or equals a Listing.[37]

If a claimant meets all of the listing criteria, she is considered disabled at step-three. A claimant who does not meet the listing criteria may still be considered disabled at step-three if her impairment(s) medically equal a listed impairment.[38] Medical equivalence can be established three ways, one of which is:

> If an individual has an impairment that is described in the listings, but either:
>
> a. the individual does not exhibit one or more of the findings specified in the particular listing, or
> b. the individual exhibits all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

---

[36] *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted).

[37] *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

[38] Soc. Sec. Ruling 17-2p. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

then we will find that his or her impairment is medically equivalent to that listing if there are other findings related to the impairment that are at least of equal medical significance to the required criteria.[39]

The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairments meet or equal one of the specified impairments set forth in the listings.[40] Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]."[41]

Listing 1.15 provides:

**1.15 *Disorders of the skeletal spine resulting in compromise of a nerve root(s)*** (see 1.00F), documented by A, B, C, *and* D:

---

[39] *Id.*

[40] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001); 20 C.F.R. § 416.920(a)(4)(iii).

[41] *Lewis,* 236 F.3d at 512; *see also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (noting that the ALJ's unexplained finding at step three was reversible error).

**A.** Neuro-anatomic (radicular) distribution of one or more of the following *symptoms* consistent with compromise of the affected nerve root(s):

    1. Pain; or
    2. Paresthesia; or
    3. Muscle fatigue.

AND

**B.** Radicular distribution of neurological *signs* present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:

    1. Muscle weakness; and
    2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and
    3. Sensory changes evidenced by:
        a. Decreased sensation; or
        b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; *or*
    4. Decreased deep tendon reflexes.

AND

**C.** Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

AND

**D.** Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least *one* of the following:

    1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches

(see <u>1.00C6d</u>) or a wheeled and seated mobility device involving the use of both hands (see <u>1.00C6e(i)</u>).

### 2.    <u>The ALJ's consideration of Listing 1.15</u>

The ALJ articulated her consideration of Listing 1.15 as follows:

Listings 1.15 and 1.16 have been considered regarding the claimant's spinal impairment, but neither has been met. As for listing 1.15, there is no evidence that the nerve roots have been compromised in a manner causing radicular symptoms of pain, paresthesia, or muscle fatigue along with signs of muscle weakness and irritation, tension, or compression. At least one of the aforementioned signs and one of the aforementioned symptoms must be present, in addition to either the requisite sensory changes or decreased deep tendon reflexes. Such findings must be established by imaging results and must have lasted, or be expected to last, for at least 12 continuous months, and there must be medical documentation of the need for an assistive device requiring either the use of both hands and/or an inability to use one upper extremity for workrelated activities, combined with the use of an assistive device in the other upper extremity.[42]

She went on to note further that:

There is no evidence that the claimant medically requires an assistive device that involves the use of both hands, nor is there evidence that the claimant has an inability to use one upper extremity and requires an assistive device using the other upper extremity as described in 1.00E4 and 1.00C6. The claimant has also not satisfied the alternative

---

[42] AR 32-33.

requirements of listing 1.15D(3), with an inability to use both upper extremities for fine and gross movements as outlined in 1.00E4.[43]

### 3.    Relevant Medical Evidence

On March 24, 2022, Plaintiff presented to Patrick Magajna, MD, of the emergency room (ER) of Providence Holy Family Hospital with complaints that she had fallen that day when walking and reported that for the last 6 months she had a burning numbness in her leg.[44] Plaintiff suffered contusions to her right shoulder and arm due to the fall.[45] Plaintiff was advised to take pain medication, consult with her primary physician, and use a cane due to the instability in her leg.[46]

On July 5, 2022, Plaintiff presented to her treating physician, Lich Pham, MD, for an unrelated issue and he noted that Plaintiff has pain numbness or tingling in her left leg and ambulates with a cane.[47]

---

[43] AR 33.

[44] AR 1823.

[45] AR 1824.

[46] AR 1826.

[47] AR 1633.

On July 19, 2022, Plaintiff presented to Cal Leonard Smith, MD, of the ER of Providence Holy Family Hospital with complaints of left leg swelling and pain.[48] Plaintiff reported a burning pain radiating into her left, trouble moving her foot and toes, and drop foot when walking.[49] It was noted that she suffered from diabetes and peripheral neuropathy and had increased her dosage of gabapentin without any relief.[50] On examination, Plaintiff had significantly diminished strength in her left ankle and toe, with 2/5 strength in dorsal and plantar flexion, as opposed to 5/5 strength on the right.[51] Additionally, Dr. Smith noted that sensation was diminished to light touch circumferentially on the left compared to the right lower extremity.[52]

---

[48] AR 1815.

[49] *Id.*

[50] *Id.*

[51] AR 1816.

[52] *Id.*

DISPOSITIVE ORDER - 18

Dr. Smith also noted tenderness along the left paraspinous musculature.[53]

On the same day, an MRI of the lumbar was performed at Community Health Center of Spokane.[54] It was noted that Plaintiff had suffered low back pain with progressive neurologic deficits, left foot weakness with pain radiating from the left hip to ankle, and significant weakness in dorsal and plantar flexion on the left ankle.[55]

Findings at the lumbar disc levels were as follows:

L1-2. No significant disc bulge or herniation. No significant central canal or foraminal stenosis. L2-3: posterior disc bulge and mild facet joint arthrous as well as mild hypertrophy of the ligamentum flavum. No significant central canal or foraminal stenosis. L3-4 Diffuse posterior disc bulge slightly more marked broad basket far laterally along the left neural foramen with moderate facet joint arthrosis and hypertrophy of the ligamentum flavum resulting in mild-to-moderate central canal stenosis and mild left neural foraminal stenosis. No significant right neural foraminal stenosis. L4-5: Diffuse disc bulge with moderate facet joint arthrosis and hypertrophy of the ligamentum flavum causing moderate central canal and moderate bilateral left greater than right foraminal stenosis. L5-S1: Mild epidural lipomatosis at this

---

[53] *Id.*

[54] AR 1657.

[55] *Id.*

1

2

level. Diffuse mild posterior disc bulge and moderate facet joint arthrosis and hypertrophy of the ligamentum flavum. There is a 1.3 x 08 cm synovial cyst along the right facet joint that extends into the spinal canal and compresses the adjacent nerve roots. It abuts the right S1 nerve root in the right lateral recess. No significant foraminal stenosis.[56]

3

4

5

The overall impression was:

6

1.3 x 0.9 cm synovial cyst along the right facet pint at LS-S1 that extends into the spinal canal and compresses the adjacent nerve roots. It abuts the right S1 nerve root in the right lateral recess. Multilevel disc and facet joint degenerative changes in the lumbar spine as described above with varying levels of central canal and foraminal stenosis at L3-4 and L4-5 as described above.[57] Dr. Pham completed a form recommending that Plaintiff be given a handicapped placard.[58]

7

8

9

10

11

12

On September 29, 2022, Plaintiff presented to Dr. Pham, who

13

noted that Plaintiff complained of left leg and foot pain, right flank

14

pain, and numbness in her left foot.[59] Plaintiff's legs were mildly

15

16

17

18

---

19

[56] AR 1657-1658.

20

[57] AR 1658.

21

[58] *Id*.

22

[59] AR 1625.

23

erythematous without cellulitis but with a sensation of pins and needles in her left foot.[60]

On October 10, 2022, Plaintiff contacted Dr. Pham's office, and reported that she had fallen twice over the weekend and had injured her left knee and thought she needed a better cane or a walker to help her balance.[61] That afternoon Plaintiff was examined by Dr. Pham, who noted that her left leg was mildly erythematous without cellulitis but with a sensation of pins and needles in her left foot.[62] Dr. Pham increased Plaintiff's gabapentin and prescribed a four-wheeled walker.[63]

4.    Analysis

The ALJ's articulated reasoning regarding Listing 1.15 is not supported by substantial evidence.  Here, the ALJ gave two reasons for finding that Plaintiff did not meet or equal Listing 1.15.  She reasoned

---

[60] AR 1627.

[61] AR 1612.

[62] AR 1616.

[63] AR 1617.

that 1) there was no evidence of nerve root compromise showing pain, paresthesia, sensory changes, or decreased deep tendon reflexes, and 2) that there was no evidence that Plaintiff required an assistive device which required both hands.

The ALJ is incorrect as to each of these findings.  First, the July 2022 MRI clearly indicated that there was diffuse mild posterior disc bulge and moderate facet joint arthrosis and hypertrophy of the ligamentum flavum, as well as a synovial cyst along the right facet joint that extended into the spinal canal and compressed the adjacent nerve roots.[64]  There was not a doubt that there was compromise of a nerve root.

As to the requisite showing that there was sign of muscle weakness, pain, paresthesia, or sensory changes, the evidence again clearly establishes the presence of those symptoms.  Plaintiff reported burning numbness in her leg in early July.[65]  Two weeks later, when Plaintiff presented to the ER after a fall, it was noted that she reported

---

[64] AR 1657-1658.

[65] AR 1823.

a burning pain radiating into her left leg, trouble moving her foot and toes, and drop foot when walking.[66] On examination, Plaintiff had significantly diminished strength in her left ankle and toe, with 2/5 strength in dorsal and plantar flexion, as well as diminished sensation.[67]

By the time Plaintiff was examined in October 2022 and prescribed a walker by Dr. Pham, Plaintiff's numbness and tingling in her leg and foot had not subsided and had in fact gotten worse.[68] Between March 2022 and October 2022, Plaintiff had suffered several falls because of her difficulty with her left leg and dragging foot.[69]

Elsewhere in the decision, the ALJ addressed the Plaintiff's prescription for a walker and stated, "[Plaintiff] reported that she uses

---

[66] *Id.*

[67] *Id.*

[68] AR 1625.

[69] AR 1612, 1657, 1824, 1815.

a walker or a cane for ambulation at all times, and she was prescribed a walker at her request (Exhibit 19F/47, 52, 123)."[70]

This statement is a mischaracterization. The medical records indicates that on October 10, 2022, Plaintiff contacted her doctor's office to advise that she had fallen twice in two days despite the use of a cane and thought she might need a better cane or a walker.[71] The doctor examined her later that day and opined that she should be using a walker rather than a cane.[72] It was Plaintiff's testimony that when he examined her, Dr. Pham stated that she should have been using a walker and not a cane since her ER admission.[73] The record establishes that Plaintiff suffered a number of falls even after being prescribed a cane and there is no reason to think that Dr. Pham's prescription for a walker was unreasonable.

---

[70] AR 44.

[71] AR 1612.

[72] AR 1617.

[73] AR 139.

The ALJ offered no conflicting opinion or evidence that would indicate that Dr. Pham's prescription for a walker was not a reasonable medical decision. She offered no evidence that Dr. Pham did not make his decision to prescribe a walker based on anything other than his own reasonable medical judgement after examining Plaintiff, along with Plaintiff's advisement that she had fallen twice in a weekend despite using a cane.

The Court concludes that had the ALJ properly considered evidence of nerve root compromise, documented muscle weakness in the left leg and foot, documented loss of sensation in the left leg and foot, and a valid prescription for a two-handed assistive device, she would have found Plaintiff to meet or equal Listing 1.15. Accordingly, the Court finds that remand is warranted for an award of benefits from October 10, 2022, the date on which it was determined by Plaintiff's medical sources that she required use of a walker to ambulate effectively.

## IV.    Conclusion

Remand for further administrative proceedings is the usual course when a harmful error occurs in the administrative proceeding,

except in rare circumstances.[74] This is a rare circumstance where an award of benefits is appropriate.

First, the ALJ failed to provide legally sufficient reasons for rejecting the medical evidence showing symptoms of muscle weakness, paresthesia, and loss of sensation resulting from nerve root compression at the L5-S1 level, which caused Plaintiff to fall and require the use of a walker to ambulate no later than October 10, 2022.

Second, further administrative proceedings will offer not benefit—the record is fully developed.[75] "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."[76]

An award of benefits is warranted. Accordingly, **IT IS HEREBY ORDERED**:

_____

[74] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[75] *See id.*

[76] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for a calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 91**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 19th day of May, 2025.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge